**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**


DANIEL SNODGRASS,

        Petitioner,

v.                                        Case No. 3:15-cv-754-J-32PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____

## ORDER

### I. Status

    Petitioner Daniel Snodgrass, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1.) on April 22, 2015.[1] Snodgrass is proceeding on an Amended Petition (Doc. 22.) with exhibits (Doc. 23), filed on September 7, 2016. Snodgrass challenges a 2012 state court (Putnam County, Florida) judgment of conviction for sexual battery for which he is currently incarcerated for a term of life.

    The Amended Petition raises sixteen grounds for relief. See Doc. 22 at 5-25.[2] Respondents filed a Response to the Amended Petition. See Response to Petition (Doc. 25; Resp.) with exhibits (Resp. Ex.). Snodgrass filed a pro se Reply. See Re: To (the

---

    [1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
    [2] For purposes of reference, the Court will cite the page number of the Amended Petition assigned by the electronic docketing system.

Attorney General) Response to My Petition and (Order to Show Cause). (Doc. 30; Reply). This case is ripe for review.

## II. **Relevant Procedural History**

On April 27, 2012, a jury convicted Snodgrass of sexual battery (count one) and two counts of lewd and lascivious molestation (counts two and three). Resp. Ex. B at 552-54. That same day, the circuit court sentenced Snodgrass to incarceration for a term of life as to each count. Id. at 578-80. The Fifth District Court of Appeal (Fifth DCA) per curiam affirmed Snodgrass' convictions and sentences on January 29, 2013, without a written opinion. Resp. Ex. J. The Mandate was issued on February 22, 2013. Resp. Ex. K.

On August 8, 2013, Snodgrass filed a pro se Motion for Postconviction Relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. L. The circuit court denied the Rule 3.850 Motion on October 17, 2013. Resp. Ex. M. The Fifth DCA per curiam affirmed the circuit court's denial of the Rule 3.850 Motion on April 29, 2014, without a written opinion. Resp. Ex. P. The Mandate was issued on June 16, 2014. Resp. Ex. S.

## III. **One-Year Limitation Period**

This action is timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

IV.    **Governing Legal Principles**

**A. Standard Under AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

**B. Exhaustion and Procedural Default**

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The

United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

---

3 Coleman v. Thompson, 501 U.S. 722 (1991).
4 Wainwright v. Sykes, 433 U.S. 72 (1977).

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

[I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## V.  <u>Analysis</u>

### A.  **Grounds One - Six – Ineffective Assistance of Standby Counsel**

In Grounds One through Six, Snodgrass alleges his standby counsel at trial was ineffective for: (1) failing to ask 470 of the 500 questions Snodgrass directed standby counsel to ask during the cross-examination of the victim; (2) being biased because Snodgrass wanted to proceed pro se and failing to ask 640 questions; (3) failing to introduce and publish evidence; (4) failing to perform unicycle demonstrations; (5) failing to impeach the victim; and (6) the cumulative error of standby counsel prejudiced him. Doc. 22 at 5-9, 14.

Respondents concede that Snodgrass exhausted these claims. Doc. 25 at 12-13. However, Respondents claim Snodgrass fails to show that the state court's adjudication of these claims was contrary to or an unreasonable application of established federal law because there is no constitutional right to the effective assistance of standby counsel. <u>Id.</u> at 15-18.

Snodgrass raised substantially similar claims of ineffective assistance of standby counsel in his Rule 3.850 Motion. Resp. Ex. L at 3-15. The circuit court denied the claim, stating the following:

> On Ground One, Defendant claims that his Standby
> Counsel provided ineffective assistance of counsel. Among

8

other complaints about Standby Counsel, Defendant protests that Standby Counsel did not ask all of the 500 questions Defendant drafted, and did not ask them in order so as to catch the witness (BW) in a lie.

In <u>Barnes v. State</u>, 2013 Fla. LEXIS 1313; 38 Fla. L. Weekly S 490, (Fla. June, [sic] 27, 2013) citing with approval to <u>Behr v. Bell</u>, 665 So. 2d 1055, 1056-57 (Fla. 1996), the Court held that a Defendant who represents himself has the entire responsibility for his own defense, even if he has standby counsel. Such a Defendant "cannot thereafter complain that the quality of his defense was a denial of 'effective assistance of counsel.'" <u>Id</u>. at 1056-57 (quoting <u>Faretta v. California</u>, 422 U.S. 806 (1975)).

In the case at bar, on January 13, 2012, a <u>Faretta</u> hearing was held. At [the] hearing[,] Defendant was informed by the Court that "if you are convicted, you cannot claim on appeal that your own lack of knowledge or skills constitutes a basis for a new trial. In other words, you cannot claim that you received ineffective assistance of counsel if you are representing yourself."

In response, Defendant stated "Very aware of that Your Honor." Ground One is denied.

Resp. Ex. M at 1-2 (record citations omitted). The Fifth DCA per curiam affirmed the circuit court's denial of these claims without a written opinion. Resp. Exs. P; S.

To the extent that the Fifth DCA affirmed the circuit court's denial on the merits,[6] the Court will address these claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an

---

[6] In looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Snodgrass is not entitled to relief on the basis of these claims.

Nevertheless, even if the state court's adjudication of these claims is not entitled to deference, the claims are without merit. A defendant has a Sixth Amendment right to self-representation, but once proceeding pro se "a defendant . . . cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" Faretta, 422 U.S. at 834 n.46. In Faretta, the Supreme Court noted trial courts can appoint standby counsel to assist a pro se defendant. Id. However, there is no constitutional right to standby counsel. See McKaskie v. Wiggins, 465 U.S. 168, 183 (1984) (noting "Faretta does not require a trial judge to permit 'hybrid' representation."). If there is no constitutional right to standby counsel, a petitioner cannot claim standby counsel was ineffective. See United States v. Windsor, 981 F.2d 943, 947 (7th Cir. 1992) (noting "[t]his court knows of no constitutional right to effective assistance of standby counsel."); Behr, 665 So. 2d at 1056-57 (quoting Faretta, 422 U.S. at 835 n.46) (holding "a defendant who represents himself has the entire responsibility for his own defense, even if he has standby counsel. Such a defendant cannot thereafter complain that the quality of his defense was a denial of 'effective assistance of counsel.'"); see generally Coleman, 501 U.S. at 752-53 (noting there is no constitutional right to postconviction counsel in state proceedings; therefore, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings."); Wainwright v. Torna, 455 U.S. 586, 587-88 (1982) (holding that

"[s]ince respondent had no constitutional right to counsel [to pursue a discretionary state appeal], he could not be deprived of the effective assistance of counsel.").

Moreover, "[a] defendant does not have a constitutional right to choreograph special appearances by [standby] counsel." McKaskle, 465 U.S. at 183. Therefore, "[o]nce a pro se defendant invites or agrees to any substantial participation by [standby] counsel, subsequent appearances by [standby] counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." Id.; see also Simpson v. Battaglia, 458 F.3d 585, 597 (7th Cir. 2006) ("[T]he inadequacy of standby counsel's performance, without the defendant's relinquishment of his Faretta right, cannot give rise to an ineffective assistance of counsel claim under the Sixth Amendment."); United States. v. Morrison, 153 F.3d 34, 55 (2d Cir. 1998) (finding no constitutional claim for ineffectiveness of standby counsel where defendant maintained control over his own defense).

On January 13, 2012, following a Faretta hearing, the circuit court allowed Snodgrass to represent himself and appointed standby counsel. Resp. Exs. B at 228, 234, 238; C. On March 16, 2012, the state moved to have standby counsel conduct the cross-examination of the victim to prevent potential trauma to the victim if Snodgrass questioned her himself. Resp. Ex. B at 257. While initially Snodgrass objected to the request, see id. at 270-72, he ultimately withdrew that objection and acquiesced to standby counsel conducting the cross-examination. Resp. Exs. B at 278; D at 14-15. In granting the state's request the circuit court acknowledged that Snodgrass wished to

remain pro se and clarified the parameters of standby counsel's participation. Specifically, the circuit court stated:

> The Defendant is to meet with stand-by counsel prior to court proceedings where B.W. will be cross examined and prepare premilitary questions for stand-by counsel to ask B.W. The Defendant has the right to add or alter questions for stand-by counsel to ask B.W. as her testimony is elicited.

Resp. Ex. B at 278.

Prior to the cross-examination of the victim, the Court discussed with the jury that standby counsel would cross-examine the victim but explained that standby counsel was "just going to be the mouthpiece," and that "these questions were prepared by Mr. Snodgrass," a fact acknowledged by standby counsel during cross-examination. Resp. Ex. A at 149-50, 158, 204. Throughout the cross-examination, Snodgrass handled objections in front of and outside the presence of the jury. Id. at 158-60, 174-84, 191-92, 200-08, 213-14, 217-18. Notably, Snodgrass had the opportunity to talk with standby counsel during the cross-examination. Id. at 190, 194-97. During one such opportunity, Snodgrass agreed to reduce the amount of questions. Id. at 196-97. At the conclusion of cross-examination, Snodgrass agreed that he had no more questions for the victim at that time, with the caveat that he wanted to reserve the right to recall the witness should he need to ask more questions. Id. at 219. Following the state's re-direct examination, Snodgrass agreed that the victim should be released for the day, but subject to recall. Id. at 225. Snodgrass never recalled the victim as a witness.

In this case, Snodgrass knowingly and voluntarily requested to proceed pro se. The record reflects Snodgrass agreed to standby counsel's participation and did not relinquish his <u>Faretta</u> rights, maintaining control over his own defense. As such, Snodgrass cannot complain that standby counsel was ineffective under the Sixth Amendment. <u>McKaskle</u>, 465 U.S. at 183; <u>Battaglia</u>, 458 F.3d at 597; <u>Morrison</u>, 153 F.3d at 55. Accordingly, for the above stated reasons, Grounds One through Six are denied.

**B. Ground Seven**

Snodgrass avers that he was falsely arrested because the charging documents included false allegations. Doc. 22 at 15.

Respondents claim Snodgrass never raised this claim with the state court; therefore, they contend that it is unexhausted and procedurally defaulted. Doc. 25 at 13. In reviewing the record, the Court finds this claim is unexhausted because Snodgrass never presented it to the state court. Snodgrass has not alleged any cause to excuse this procedural default. However, in his Reply, Snodgrass appears to assert a claim of actual innocence/miscarriage of justice as a gateway for consideration of this procedurally defaulted claim. Doc. 30 at 2, 19-23; <u>Carrier</u>, 477 U.S. at 496. Specifically, Snodgrass claims he is actually innocent because witnesses lied, the prosecution "railroaded" him, and his ex-wife and the victim's mother conspired against him to fabricate these charges. Doc. 30.

As noted above, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon</u>, 523 U.S. at 559. Snodgrass has

presented no such reliable evidence to the Court. Instead, Snodgrass has either attempted to provide new interpretations of existing evidence or to discuss collateral evidence not presented at trial that would allegedly impeach the credibility of witnesses or contradict certain testimony. Doc. 30 at 2-23. However, providing different interpretations of evidence presented at trial is not sufficient to demonstrate actual innocence. See Claritt v. Kemp, 336 F. App'x 869, 871 (11th Cir. 2009) (noting Clarrit's new interpretation of existing evidence was insufficient to show actual innocence to overcome a procedural default). Likewise, an actual innocence claim cannot be based on new defense theories or impeachment evidence not directly related to the crime. See Johnson, 256 F.3d at 1172 (holding a new defense theory does not establish actual innocence); Sawyer v. Whitley, 505 U.S. 333, 349 (1992) (holding "[t]his sort of latter-day evidence brought forward to impeach a prosecution witness will seldom, if ever, make a clear and convincing showing that no reasonable juror would have believed the heart of Shano's account of petitioner's actions."); Calderon, 523 U.S. at 563 (impeachment evidence a step removed from evidence relating to the actual crime does not form the basis for an actual innocence claim).

To the extent Snodgrass contends his ex-wife and the victim's mother conspired against him to force the victim to fabricate her story, he has failed to present any corroborating evidence outside of his own strained interpretation of the facts. Indeed, Snodgrass attempted to raise this same argument at trial. Resp. Ex. A at 666-74, 962-69. However, the circuit court excluded any testimony about such a conspiracy, reasoning that it was entirely conjecture without any evidence supporting it. Resp. Ex.

A at 967-68. Likewise, here, Snodgrass has presented no evidence to the Court that his ex-wife and the victim's mother even knew each other, let alone evidence that they forced the victim to fabricate sexual abuse claims. As such, Snodgrass' conspiracy theory does not constitute new reliable evidence to establish his actual innocence. Accordingly, Snodgrass has failed to overcome the procedural default here.

Nevertheless, assuming this claim is exhausted and properly presented to the Court, it is without merit. "The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment or information is so deficient that the convicting court is deprived of jurisdiction." DeBenedictis v. Wainwright, 674 F.2d 841, 842-43 (11th Cir. 1982). The Eleventh Circuit has explained:

> "An indictment is considered legally sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir.2009) (citation and quotations omitted). "In determining whether an indictment is sufficient, we read it as a whole and give it a 'common sense construction.' " Id. (citing United States v. Gold, 743 F.2d 800, 813 (11th Cir.1984) and United States v. Markham, 537 F.2d 187, 192 (5th Cir.1976)). "In other words, the indictment's 'validity is to be determined by practical, not technical, considerations.' " Jordan, 582 F.3d at 1245 (citing Gold, 743 F.2d at 812).

United States v. Schmitz, 634 F.3d 1247, 1259-60 (11th Cir. 2011) (footnote omitted).

Here, Snodgrass has not alleged the circuit court lacked jurisdiction; therefore, this claim is not cognizable. See DeBenedictis, 674 F.2d at 842-43. Even if Ground

Seven could be liberally construed as a federal constitutional challenge, it would fail because the charging documents clearly and correctly set forth the essential elements of each count, named Snodgrass as the accused, described the date and location of the offenses, and stated the statutory basis for the offenses. Resp. Ex. B at 10, 69, 296-97. Accordingly, the charging documents were legally sufficient to place Snodgrass on notice and invoke the circuit court's jurisdiction. See Schmitz, 634 F.3d at 1259-60. Moreover, to the extent Snodgrass challenges the sufficiency of the factual allegations in the Information, the proper venue for such a challenge would be at trial. Indeed, Snodgrass had his opportunity to challenge the evidence at trial, but the jury found it unavailing. Ground Seven is therefore without merit.

## C. Ground Eight

Snodgrass claims that his Fourth Amendment rights were violated when the police illegally searched and seized items from his home. Doc. 22 at 15-16. According to Snodgrass, the search warrant was based on allegedly false information provided by the victim. Id.

Respondents claim Snodgrass never raised this claim with the state court; therefore, they contend that it is unexhausted and procedurally defaulted. Doc. 25 at 13. In reviewing the record, the Court finds this claim is unexhausted and now procedurally defaulted because Snodgrass never presented it to the state court. Snodgrass has not alleged any cause to excuse this procedural default. Moreover, as explained above, Snodgrass' claim of actual innocence is not sufficient to overcome this procedural default.

Nevertheless, Snodgrass is still not entitled to federal habeas relief on this claim. The United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976). The Fifth Circuit has explained that:

> An "opportunity for full and fair litigation" means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, <u>Stone v. Powell</u> bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.

<u>Caver v. State of Ala.</u>, 577 F.2d 1188, 1192 (5th Cir. 1978); <u>see also</u> <u>Lawhorn v. Allen</u>, 519 F.3d 1272, 1288 (11th Cir. 2008).

Florida provides an opportunity for the full and fair litigation of Fourth Amendment claims, <u>see</u> Fla. R. Crim. P. 3.190(g), though Snodgrass never availed himself of this opportunity. Resp. Ex. B. As such, the Court cannot review his Fourth Amendment claim. <u>See</u> <u>Stone</u>, 428 U.S. at 494; <u>Carver</u>, 577 F.2d at 1192. Accordingly, Snodgrass is not entitled to federal habeas relief on Ground Eight.

**D. Ground Nine**

Snodgrass asserts that the state withheld the following evidence: (1) the <u>Williams</u>[7] Rule hearing transcripts; (2) two police reports; (3) the victim's rapid plasma reagin (RPR) test results; (4) all six foster parents' names and addresses; (5) a copy of

---

[7] <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959).

a tape recording used at trial; (6) the jury selection transcripts; (7) the "priors" of the victim and her sister; (8) pictures he took of the victim and her sister; and (9) a compact disc (CD) of the mother's interview. Doc. 22 at 16-17.

Respondents contend Ground Nine was not properly presented in state court; thus, the Court is precluded from considering it on the merits. Doc. 25 at 13.

### i. Sub-claims (2), (3), and (7)

Snodgrass raised sub-claims two, three, and seven in ground four of his Rule 3.850 Motion. Resp. Ex. L at 34-36. In denying these claims, the circuit court ruled that "Defendant makes an unsubstantiated assertion which also could or should have been raised on direct appeal." Resp. Ex. M at 2-3. The Fifth DCA per curiam affirmed the denial of these claims without a written opinion. Resp. Exs. P; S.

A procedural default may result from non-compliance with state procedural requirements. Coleman, 501 U.S. at 729-30. Federal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to comply with an independent and adequate state procedural rule. Sykes, 433 U.S. at 85-86. The procedural bar imposed in Snodgrass' case is firmly established and regularly followed in the Florida courts. See Fla. R. Crim. P. 3.850(c); see also Teffeteller v. State, 734 So. 2d 1009, 1016 (Fla. 1999) (holding substantive claims procedurally barred because they could have been raised on direct appeal); Smith v. State, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). Thus, the Court finds these sub-claims are procedurally defaulted. See Coleman, 501

U.S. at 729-30. Snodgrass has failed to show cause or prejudice to overcome this procedural default. Likewise, as noted above, Snodgrass' claim of actual innocence is insufficient to excuse this procedural default. As such, the Court declines to consider these sub-claims on the merits. <u>Sykes</u>, 433 U.S. at 85-86.

### ii. Sub-claims (1), (4), (5), (6), (8), and (9)

Regarding the remaining sub-claims; these claims are unexhausted because Snodgrass never raised these issues with the state court. <u>See</u> <u>Boerckel</u>, 526 U.S. at 845. Snodgrass has failed to show cause or prejudice to overcome his failure to exhaust. Moreover, as noted above, Snodgrass' claim of actual innocence is not credible and will not excuse his failure to exhaust these sub-claims.

Nevertheless, even if not procedurally defaulted, these sub-claims fail. <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) governs a state's withholding of exculpatory evidence. To establish a <u>Brady</u> claim, a petitioner must demonstrate: "(1) that the prosecution suppressed evidence (2) that was favorable to the [petitioner] or exculpatory and (3) that the evidence was material." <u>United States v. Blasco</u>, 702 F.2d 1315, 1327 (11th Cir. 1983) (citation omitted). Notably, "[t]he <u>Brady</u> mandate only applies to information in the possession of the prosecutor or anyone under his authority that defense counsel could not have obtained by exercising reasonable diligence through other means." <u>United States v. Naranjo</u>, 634 F.3d 1198, 1212 (11th Cir. 2011); <u>see also</u> <u>United States v. Griggs</u>, 713 F.2d 672, 674 (11th Cir. 1983) ("Where defendants, prior to trial, had within their knowledge the information by which they could have ascertained the alleged <u>Brady</u> material, there is no suppression by the government.").

Furthermore, "a <u>Brady</u> claim fails when it is only speculative that the materials at issue would have led to exculpatory information." <u>Wright v. Sec'y Fla. Dep't of Corr.</u> 761 F.3d 1256, 1281 (11th Cir. 2014).

As to sub-claims one and six, transcripts of the <u>Williams</u>' Rule hearing and of jury selection do not constitute <u>Brady</u> material because it is not evidence, especially evidence controlled exclusively by the state. Snodgrass was present during each proceeding, and it was not the state's responsibility to provide transcripts to Snodgrass. Resp. Exs. A; B; D. Concerning sub-claim four, the name and addresses of the victim's foster parents would not have been relevant to the crimes at issue here as the victim was put in foster care after the crimes occurred. <u>Id.</u> at 294. Moreover, Snodgrass merely speculates material testimony could be derived from the victim's foster parents, but <u>Brady</u> claims cannot be premised on speculation. Doc. 22 at 16; <u>Wright</u>, 761 F.3d at 1281.

Regarding sub-claim five, the record reflects the state did provide Snodgrass a copy of the recorded statement. Resp. Ex. A at 1041. If Snodgrass wanted a transcript, he could have obtained one with the use of reasonable diligence. <u>See</u> <u>Naranjo</u>, 634 F.3d at 1212. Furthermore, these are recordings of Snodgrass; thus, he was aware of its existence prior to trial. Resp. Ex. A at 1042-43. Therefore, this evidence was not suppressed. <u>See</u> <u>Griggs</u>, 713 F.2d at 674.

Concerning sub-claim eight, Snodgrass admits he took the pictures; therefore, he knew about their existence prior to trial and if he did not have them for the preparation of his defense, the exercise of reasonable diligence would have enabled

him to possess them. Accordingly, there was no suppression of these photographs under <u>Brady</u>. <u>See</u> <u>Naranjo</u>, 634 F.3d at 1212; <u>Griggs</u>, 713 F.2d at 674. Lastly, as to sub-claim nine, the record reflects a CD of the mother's interview was provided to defense counsel prior to trial. Resp. Ex. B at 68, 88. Accordingly, this evidence was not suppressed. Ground Nine is without merit.

**E. Grounds Ten, Eleven, and Twelve**

In Grounds Ten, Eleven, and Twelve, Snodgrass contends that the state knowingly presented false testimony. Doc. 22 at 17-19. In Ground Ten, Snodgrass asserts that the victim's story changed six to seven times throughout various interviews and depositions and she lied at least ninety times at trial. <u>Id.</u> Snodgrass argues that the state knew of the discrepancies prior to trial, but still presented her testimony. <u>Id.</u> In Ground Eleven, Snodgrass asserts that the victim's sister lied about Snodgrass molesting her, as evidenced by the state's dismissal of a charge of lewd and lascivious molestation of the victim's sister. <u>Id.</u> at 17-18. In Ground Twelve, Snodgrass claims that Detective Taylor lied several times in his depositions and at trial, lies that Snodgrass claims he pointed out during Detective Taylor's cross-examination. <u>Id.</u> at 18-19.

Respondents contend Snodgrass failed to properly present these claims in state court, barring federal habeas review. Doc. 25 at 14.

Snodgrass raised Grounds Ten, Eleven, and Twelve in ground three of his Rule 3.850 Motion. Resp. Ex. L at 24-33. In addressing these claims, the circuit court found that:

21

> This is an unsubstantiated claim that is improper for a Rule 3.850 Motion. This is also a ground that could or should have been raised on direct appeal. Ground Three is denied.

Resp. Ex. M at 2. The Fifth DCA per curiam affirmed the denial of these claims without a written opinion. Resp. Exs. P; S.

A procedural default may result from non-compliance with state procedural requirements. Coleman, 501 U.S. at 729-30. Federal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to comply with an independent and adequate state procedural rule. Sykes, 433 U.S. at 85-86. The procedural bar imposed in Snodgrass' case is firmly established and regularly followed in the Florida courts. See Fla. R. Crim. P. 3.850(c); see also Teffeteller, 734 So. 2d at 1016; Smith, 445 So. 2d at 325. Thus, the Court finds these claims are procedurally defaulted. Snodgrass has failed to show cause or prejudice to overcome this procedural default. Likewise, as noted above, Snodgrass' claim of actual innocence is insufficient. As such, the Court declines to consider these claims on the merits. Sykes, 433 U.S. at 85-86.

**F. Ground Thirteen**

Snodgrass asserts that he is actually innocent and gives a litany of reasons why he believes such. Doc. 22 at 19-20. Essentially, Snodgrass claims he is innocent because the victim and other witnesses lied and conspired against him. Id.

Respondents contend Snodgrass failed to properly present this claim in state court; thus, it is precluded from federal habeas review. Doc. 25 at 14.

Snodgrass raised this claim as ground six in his Rule 3.850 Motion. Resp. Ex. L at 42-46. In denying this claim, the circuit court ruled that "[t]his ground is improper for a Rule 3.850 Motion." Resp. Ex. M at 3. The Fifth DCA per curiam affirmed the denial of these claims without a written opinion. Resp. Exs. P; S.

It is unclear whether the circuit court's conclusion that this claim is "improper for a Rule 3.850 Motion" constitutes a firmly established and regularly followed state procedural bar. Regardless, Snodgrass is not entitled to federal habeas relief on this claim. While a federal habeas petitioner may allege actual innocence to overcome a procedural bar or the application of the one-year limitations period, the Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (citing Herrera v. Collins, 506 U.S. 390, 404-05 (1993)). However, the Eleventh Circuit "forbids granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases." Jordan v. Sec'y Dep't of Corr., 485 F.3d 1351, 1356 (11th Cir. 2007) (citations omitted); see also Cunningham v. Dist. Attorney's Office for Escambia Cty., 592 F.3d 1237, 1272 (11th Cir. 2010) (recognizing that "this Court's own precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases."). Therefore, Ground Thirteen is not cognizable on federal habeas review. Even if it were, the claim is subject to denial on the merits.

## G. Ground Fourteen

Snodgrass contends that the circuit court erred in excluding the testimony of his former lawyer, Jean Moyer. Doc. 22 at 21. According to Snodgrass, Moyer would

have testified that the victim's sister and father told her that the victim fabricated the allegations against Snodgrass because the victim's mother was trying to get custody of the children from her father. Id.

Respondents submit that Snodgrass failed to fairly present the federal nature of this claim in state court, and as such, the claim is unexhausted and procedurally defaulted. Doc. 25 at 14.

At trial, Snodgrass proffered the testimony of Moyer. Resp. Ex. A at 648-76. Moyer testified she held a meeting with the victim's sister and father during her pre-trial investigation. Id. at 648-53. During that meeting, the victim's sister allegedly stated the victim never told her that Snodgrass harmed her. Id. at 651. Furthermore, Moyer claimed that the father stated he believed the victim's mother coerced the victim into fabricating the sexual abuse to gain an advantage in a custody battle over the children. Id. at 652. The circuit court ultimately excluded Moyer as a witness, concluding her testimony constituted hearsay. Id. at 676.

Snodgrass raised this claim in his pro se brief on direct appeal. Resp. Ex. G at 5-6. When briefing this issue, however, Snodgrass did not state or suggest that it was a federal claim. Id. Instead, Snodgrass argued the relevancy of the excluded testimony and asserted it did not amount to hearsay. Id. As such Ground Fourteen is unexhausted and procedurally defaulted. Baldwin, 541 U.S. at 29. Snodgrass has failed to show cause for or prejudice from this procedural default. Likewise, as noted above, Snodgrass' claim of actual innocence is insufficient to overcome this procedural default.

Nevertheless, even if this claim was exhausted, Snodgrass would not be entitled to relief. Moyer's proffered testimony reflects it was based entirely on her recollection of what the victim's sister and father told her, which would be inadmissible hearsay. See §§ 90.801-805, Fla. Stat. Moreover, the victim's sister testified at trial that the victim told her "no" when she asked her if Snodgrass inappropriately touched her. Resp. Ex. A at 430. Similarly, the victim's father testified the victim never told him about the sexual abuse. Id. at 854, 878. Accordingly, the facts Moyer would have testified to were presented at trial. However, the jury still found Snodgrass guilty. Furthermore, testimony from the father concerning his belief as to Snodgrass' guilt or innocence is impermissible. See Martinez v. State, 761 So. 2d 1074, 1079 (Fla. 2000) (noting "that a witness's opinion as to the guilt or innocence of the accused is not admissible.") (citations omitted). For the above stated reasons, Ground Fourteen is denied.

## H. Ground Fifteen

Snodgrass avers that the circuit court erred in denying his request to present evidence that the victim had previously accused two other men of similar molestations. Doc. 22 at 22-23. Notably, Snodgrass contends these prior accusations were probably false but does not allege that it was actually confirmed that these prior allegations were false. Id. He further maintains that the circuit court erred in denying his request to present evidence that his ex-wife paid the victim's mother to fabricate the basis of these charges. Id.

Respondents submit that Snodgrass failed to fairly present the federal nature of this claim in state court, and as such, the claim is unexhausted and procedurally defaulted. Doc. 25 at 14-15.

At trial, Snodgrass argued to the circuit court that the victim's prior accusations should be admitted. Resp. Ex. A at 197-208. However, the circuit court excluded the evidence. Id. at 205-07. Snodgrass raised a similar claim in his pro se brief on direct appeal. Resp. Ex. G at 7. When briefing this issue, however, Snodgrass did not state or suggest that it was a federal claim. Id. Instead, Snodgrass merely argued the relevancy of the excluded evidence. Id. As such Ground Fourteen is unexhausted and procedurally defaulted. Baldwin, 541 U.S. at 29. Snodgrass has failed to show cause for or prejudice from this procedural default. Likewise, as noted above, Snodgrass' claim of actual innocence is insufficient to overcome this procedural default.

Nevertheless, even if properly exhausted, this claim fails. Pursuant to Florida law, evidence of a victim's prior accusations of sexual abuse unrelated to the defendant, even if false, are not admissible. Pantoja v. State, 59 So. 3d 1092 (Fla. 2011). However, under federal law if those prior accusations of sexual abuse are *false*, then the accusations are admissible under the Confrontation Clause. Compare Sec'y Fla. Dep't of Corr. v. Baker, 406 F. App'x 416 (11th Cir. 2010) (holding that state trial court's ruling prohibiting petitioner from cross-examining the victim about prior false accusations of sexual abuse from other men violated petitioner's Confrontation Clause rights), with United States v. Tail, 459 F.3d 854, 860-61 (8th Cir. 2006) (finding no violation of the Confrontation Clause because defendant failed to support his claim

that the victim's previous accusations of abuse were false and therefore the evidence "had only limited probative value."), Quinn v. Haynes, 234 F.3d 837, 846 (4th Cir. 2000) ("A true allegation of another sexual assault is completely irrelevant to credibility."), and Parker v. Sec'y Dep't of Corr., No. 8:10-CV-1576-T-27TGW, 2013 WL 4080349, at *5 (M.D. Fla. Aug. 13, 2013) (distinguishing Baker in finding no Due Process or Confrontation Clause violation in trial court's exclusion of evidence of prior accusations of sexual abuse where petitioner provided no evidence that the accusations were false).

Here, Snodgrass presented no direct evidence at trial or in his Amended Petition showing that the victim's prior accusations were false. Resp. Ex. A at 197-208; Doc. 22. The record reflects that the victim made prior allegations of sexual abuse by two men other than Snodgrass. Resp. Ex. A at 200-01. Snodgrass contends that because those allegations were never prosecuted, the victim must have lied about them. Doc. 22 at 22. However, the mere failure to prosecute is not evidence of the victim fabricating these past accusations. See O'Quinn v. Sec'y Dep't of Corr., No. 6:09-CCV-217-Orl-36GJK, 2012 WL 750752, at *7 (M.D. Fla. March 7, 2012) (finding "there is no indication the victim's allegations were false merely because the accused was not prosecuted."). Accordingly, the Court finds Snodgrass has presented no credible evidence that the victim's past allegations of sexual abuse were false. Therefore, this evidence would have been inadmissible. Tail, 459 F.3d at 860-61; Quinn, 234 F.3d at 846; Parker, 2013 WL 4080349, at *5. Ground Fifteen is denied.

## I. Ground Sixteen

Snodgrass claims that the prosecutor was so desperate to get a conviction that she commented on false testimony and fabricated evidence during her closing arguments. Doc. 22 at 23-24. Specifically, Snodgrass contends the prosecutor's closing arguments were improper because she lied about: (1) Snodgrass not allowing parents to be present during the lessons; (2) the presence of video cameras in his bedroom and bathroom at the time of the offense; (3) why a large amount of cookies were next to his bed; (4) pictures of the victim wearing costumes displayed in his "show book"; (5) the victim stating it hurt when Snodgrass penetrated her vagina; and (6) the rope used to restrain the victim. Id. at 24; Doc 23-19.

Respondents contend Snodgrass failed to properly present this claim in state court; thus, it is precluded from federal habeas review. Doc. 25 at 15.

Snodgrass raised this claim as ground two in his Rule 3.850 Motion. Resp. Ex. L at 16-23. In denying this claim, the circuit court ruled that "[t]he Prosecutor's statements appear to be a fair comment on the evidence presented," and "[r]egardless, this is a ground that should or could have been brought up on direct appeal." Resp. Ex. M at 2. The Fifth DCA per curiam affirmed the denial of these claims without a written opinion. Resp. Exs. P; S.

A procedural default may result from non-compliance with state procedural requirements. Coleman, 501 U.S. at 729-30. Federal courts are barred from reaching the merits of a state prisoner's federal habeas claim where the petitioner has failed to comply with an independent and adequate state procedural rule. Sykes, 433 U.S. at

85-86. The procedural bar imposed in Snodgrass' case is firmly established and regularly followed in the Florida courts. See Fla. R. Crim. P. 3.850(c); see also Teffeteller, 734 So. 2d at 1016; Smith, 445 So. 2d at 325. Thus, the Court finds these claims are procedurally defaulted. Coleman, 501 U.S. at 729-30. Snodgrass has failed to show cause or prejudice to overcome this procedural default. Likewise, as noted above, Snodgrass' claim of actual innocence is insufficient.

Nevertheless, even if not procedurally defaulted, Snodgrass is not entitled to relief. During closing arguments "a prosecutor may 'assist the jury in analyzing, evaluating, and applying the evidence' and, therefore, may 'urge[ ] the jury to draw inferences and conclusions from the evidence produced at trial." United States v. Adams, 339 F. App'x 883, 886 (11th Cir. 2008) (quoting United States v. Johns, 734 F.2d 657, 663 (11th Cir.1984)). However, "[a] *material* misstatement of fact in a closing argument is improper." Ruiz v. Sec'y Fla. Dep't of Corr., 439 F. App'x 831, 834 (11th Cir. 2011) (citing Davis v. Zant, 36 F.3d 1538, 1548 n.15 (11th Cir. 1994)) (emphasis added).

Each of the prosecutor's arguments raised in her closing argument was a proper comment or inference on the evidence presented at trial.

### i.   The Presence of Parents

During closing arguments, the state contended that Snodgrass wanted the victim alone and to ensure no witnesses were present, which is why he did not allow parents to be present during the training. Resp. Ex. A at 1059-60, 1100. Snodgrass contends this was a lie, because the victim testified her family was present, but outside

of the house at the time of the sexual abuse. Doc. 23-19 at 4. However, the victim's father also testified Snodgrass told him that parents were not allowed to be present during the unicycle training lessons. Resp. Ex. A at 824. Accordingly, there was an evidentiary basis in the record to argue this point; therefore, the comments were not improper. Adams, 339 F. App'x at 886.

### ii. Security Cameras

During closing arguments, the prosecutor noted that hidden cameras were found angled towards the bathroom and inside the bedroom, and that one of the first things the victim observed when she entered the house was a monitor with the live feed of surveillance video. Resp. Ex. A at 1061. The record reflects the victim testified she saw a split-screen monitor with four camera feeds in Snodgrass' living room, and Detective Taylor testified that he observed surveillance style cameras in the bathroom and bedroom. Resp. Ex. A at 101-03, 290-91. The prosecutor's comments discuss this evidence in the same light as it was presented at trial. The state noted that the detectives spotted the cameras and that the victim saw the monitors. Moreover, despite Snodgrass' self-serving testimony to the contrary that he placed the cameras in there after the incident, the prosecutor could still argue to the jury that they disregard that testimony as incredible and infer the cameras were in place at the time of the incident. See Kimes v. United States, 240 F.2d 301, 302 (5th Cir. 1957) (noting that "[i]t is well settled that the jury was the sole judge of the credibility of the witnesses and had the right, after due consideration, to believe or disbelieve the

testimony of any witness that took the stand."). Accordingly, these comments were not improper. <u>Adams</u>, 339 F. App'x at 886.

### iii. Tray of Cookies

During closing arguments, the prosecutor discussed the presence of teddy bears, pink sheets, glittery costumes, and a tray of cookies by the bed, along with offers of limousine rides and money to show how Snodgrass would lure little girls. Resp. Ex. A at 1058-62. Snodgrass claims it was improper to discuss the cookie tray because he notes that he and various defense witnesses testified Snodgrass received the cookie tray approximately two months after the incident occurred. Doc. 23-19 at 28. The record reflects Detective Taylor found a tray of cookies by Snodgrass' bed and he thought it was peculiar. Resp. Ex. A at 357-58. Again, the jury was free to reject Snodgrass' self-serving testimony or the other defense witnesses' testimony on the subject. <u>Kimes</u>, 240 F.2d at 302. Accordingly, the prosecutor could make that argument to the jury to disbelieve that testimony; therefore, the comments were not improper. <u>Adams</u>, 339 F. App'x at 886. Moreover, the existence of the cookie tray was not a "material" fact; therefore, even if not an accurate comment on the evidence, it was not improper. <u>Ruiz</u>, 439 F. App'x at 834.

### iv. Pictures of the Victim in the "Trophy Book"

During closing arguments, the state argued that there was no excuse for keeping the photographs of the victim in a book Snodgrass referred to as a "trophy" or "show" book. Resp. Ex. A at 1100. Snodgrass contends this was a lie because none of the pictures of the victim in the costume were put into that book. Doc. 23-19 at 33-34.

The record reflects that pictures of the victim and her sister performing with Snodgrass are in this book, a fact Snodgrass admitted. Resp. Ex. A at 281-82, 1015-16, 1018-19. However, Snodgrass denied that the book contained any pictures of the children in costumes. Id. at 1021. Notably, this "trophy book" was introduced into evidence; therefore, the jury had it available to review. Id. at 281-82, 1016. As there were pictures of the victim and her sister in the "trophy book" and the prosecutor did not specify which pictures were in that book during her closing argument, the Court finds this statement to be a proper comment on the evidence. Adams, 339 F. App'x at 886.

### v. The Victim's Testimony Regarding Pain

During closing arguments, the prosecutor stated that Snodgrass hurt the victim when he penetrated her vagina with his penis. Resp. Ex. A at 1059, 1104. The record reflects the victim testified the penetration hurt her. Id. at 125. Accordingly, this was a proper comment on evidence presented to the jury. Adams, 339 F. App'x at 886.

### vi. The Rope

In closing arguments, the state discussed Snodgrass tying the victim to the bed with a rope. Resp. Ex. A at 1059. Snodgrass takes issue with the victim's various descriptions of the rope, specifically the color of it, throughout the investigation and criminal proceedings. Doc. 22 at 23-24. The record reflects that the victim testified that Snodgrass tied her to the bed with a white rope she described as soft and braided. Resp. Ex. A at 118, 167. The state introduced a photograph of a rope that the victim identified as the rope Snodgrass used to tie her to the bed. Id. at 118-19. Accordingly,

as the rope was in evidence and the victim positively identified it as the one used during the commission of the offense, these comments were proper. <u>Adams</u>, 339 F. App'x at 886. To the extent Snodgrass disputes the victim's trial testimony in comparison to previous comments she made, this is a matter of credibility Snodgrass should have addressed during cross-examination and his own closing arguments, but it does not render the state's closing arguments improper.

For the above stated reasons, Ground Sixteen is denied.

Accordingly, it is **ORDERED AND ADJUDGED**:

1.      The Amended Petition (Doc. 22) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.      The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.      If Snodgrass appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[8]

---

[8] The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Sndograss "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

33

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of August, 2018.

TIMOTHY J. CORRIGAN
United States District Judge

Jax-8
C:    Daniel Snodgrass, #134886
       Counsel of record

---

Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.